UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

STEVEN LAMPLEY,

                       Plaintiff,

v.                                                     Case No. 17-cv-1132-pp

OFFICER LATOUR,
DR. SCHWARTZ-OSCAR,
SERGEANT ROSMERINOUSKI,
KATHY LEMMONS, AND
CO JOHNSON,

                       Defendants.
_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SUBMIT TRUST ACCOUNT STATEMENT (DKT. NO. 5), AND DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 11)**
_____

Plaintiff Steven Lampley is a Wisconsin state prisoner representing himself. He filed a civil rights complaint alleging that the defendants violated his constitutional rights related to a suicide attempt. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, screens the plaintiff's complaint, denies as moot the plaintiff's motion for extension of time to submit his institution trust account statement and denies his motion to appoint counsel.

**A.    Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff is incarcerated. 28 U.S.C. §1915. The law allows a court to give an incarcerated

plaintiff the ability to proceed with his lawsuit without pre-paying the civil case filing fee, as long as he meets certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

The plaintiff submitted his trust account statement on August 31, 2017. Dkt. No. 7. On September 1, 2017, Magistrate Judge Duffin issued an order finding that the plaintiff lacked the funds to pay an initial partial filing fee, and waiving that fee. Dkt. No. 8; 28 U.S.C. §1915(b)(4). Judge Duffin's September 1, 2017 order also gave the plaintiff an opportunity to dismiss the case voluntarily, so that he could avoid incurring a "strike" for filing a frivolous or unfounded lawsuit. Dkt. No. 8. The plaintiff has not moved to dismiss the case.

Because the plaintiff did not consent to the magistrate judge handling this case, the clerk's office reassigned it to this court on September 8, 2017. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee and will allow the plaintiff to pay the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

**B.    Screening of the Plaintiff's Complaint**

    1.    <u>Standard for Screening Complaints</u>

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity, or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). A court

2

may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of a complaint must allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Indeed, allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, a court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption

3

of truth." Id. Second, a court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id.

To state a claim that a state actor violated his constitutional rights under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). A court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

2. Facts Alleged in the Complaint

The plaintiff is incarcerated at the Green Bay Correctional Institution (GBCI). Dkt. No. 1 at 1. The institution classifies him as having a "serious mental illness," and he has been in segregation for almost four years. Id. at 2.

On the morning of June 4, 2017, the plaintiff was moved from the "500 wing"—which is a "quiet wing" at GBCI—to the "200 wing," which is a "very bad and noisy wing." Id. Defendants CO Johnson and CO Latour escorted the plaintiff to the 200 wing. Id. The plaintiff told them that he didn't want to move to the 200 wing because the "noisy dudes and crank inmates" are on the wing, but Johnson and Latour took him there anyway. Id. at 3.

4

When Johnson and Latour placed the plaintiff in Cell 231, he told them that he was feeling suicidal. Id. The plaintiff asked to see a supervisor and a "PSU" (presumably, psychological services unit) staff member right away so he could be placed on "observation," to prevent him from harming himself. Id. The plaintiff attempted to hold his cell's "trap door" open until Johnson and Latour called the segregation supervisor, defendant Rosmerinouski. Id. Johnson and Latour assured the plaintiff that if they let him close the trap door they would tell Rosmerinouski to talk with him. Id. Johnson also said that she would tell defendant Dr. Schwartz-Oscar from the PSU to see the plaintiff. Id. at 3-4.

Next, the plaintiff states, "long story short, no one came to see me that day on 6-4-17 or on 6-6-17." Id. at 4. (The plaintiff does not state whether anyone saw him on June 5, 2017.)

The morning of June 4, 2017, after the plaintiff complained about feeling suicidal, Latour distributed nail clippers to inmates. Id. Latour never returned to retrieve the nail clippers from the plaintiff, which "he was suppose[d] to do, because we are not as inmates in segregation allowed to keep sharp objects in our cells because we may harm ourselves." Id.

On June 6, 2017, the plaintiff informed defendant Nurse Kathy Lemmons that he was feeling suicidal. Id. She told the plaintiff that she would tell PSU about his issue. Id. No one came to see the plaintiff after he complained to Nurse Lemmons. Id. Staff ignored him all day on June 4 and June 6, 2017. Id. (Again, the plaintiff does not mention what, if anything, took place on June 5, 2017.)

5

At about 7:30 p.m. on June 6, 2017, the plaintiff became fed up with staff ignoring him and he remembered that he still had the nail clippers from Latour. Id. He altered the clippers to harm himself and then cut his wrists, arms, chest and forehead. Id. at 4-5. Officer Heffernan, who is not a defendant, found the plaintiff cutting himself and asked him to stop, but the plaintiff refused. Id. at 5. Officer Heffernan sprayed pepper spray into the plaintiff's cell and called for a supervisor. Id. The plaintiff was then handcuffed and escorted to observation. Id.

For relief, the plaintiff seeks monetary damages and injunctive relief. Id. at 6.

3. Discussion

The plaintiff alleges that even though he told the defendants that he was suicidal, they took no action, which led to his suicide attempt. This sounds like a claim of deliberate indifference to serious medical need, in violation of the Eighth Amendment

The Eighth Amendment protects inmates from "a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (quoting Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009); and Estelle, 429 U.S. at 103). A prison staff member violates the Eighth Amendment if he or she is "deliberately indifferent to prisoners' serious medical needs." Id. (quoting Estelle, 429 U.S. at 104)). A prisoner who is asserting deliberate indifference, or deficient medical care, must show two things: "1) an

6

objectively serious medical condition; and 2) an official's deliberate indifference to that condition." Id. (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). "Deliberate indifference" is subjective—"a plaintiff must show that the defendant 'acted with a sufficiently culpable state of mind,' something akin to recklessness." Id. at 751 (quoting Johnson, 444 F.3d at 585)). A prison official has that culpable state of mind when he or she "knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." Id. (citing Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)). The prisoner does not need to show that the prison official intended or tried to cause whatever harm occurred, or that the prison official deliberately ignored him. Id. (citations omitted).

The court finds that, at this early stage, the plaintiff has alleged sufficient facts to allow him to proceed on an Eighth Amendment deliberate indifference claim against defendants Latour, Johnson and Lemmons. The Seventh Circuit has held more than once that the risk of suicide is a serious condition. See, *e.g.*, Estate of Miller, *ex rel.* Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012). The plaintiff has alleged that he told both Johnson and Latour that he was feeling suicidal, and that while they assured him they would have someone come to see him, no one ever did. He also alleges that, despite having told Latour he was suicidal, Latour gave him nail clippers, and did not come to collect them. Finally, he alleges that he told Lemmons that he was feeling suicidal; again, she said she would have someone see him, but no one ever did.

7

The plaintiff has not alleged sufficient facts for the court to allow him to proceed on deliberate indifference claims against Dr. Schwartz-Oscar or Sergeant Rosmerinouski. The plaintiff does not allege that these defendants knew he was suicidal. While he says that Johnson and Latour told the plaintiff that they would notify Rosmerinouski, he does not say whether they did so. It appears that they may not have notified Rosmerinouski, given that no one followed up with the plaintiff. The same is true of Dr. Schwartz-Oscar—although Johnson told the plaintiff that she would tell Dr. Schwartz-Oscar that the plaintiff was suicidal, the plaintiff does not state that she did so.

A state actor is liable for his or her own misdeeds under §1983, but not for anyone else's. Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). A plaintiff must allege sufficient facts to show that a defendant was personally responsible for the deprivation of his constitutional rights in order to proceed against that defendant under §1983. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted). The plaintiff has not alleged sufficient facts to show that Schwartz-Oscar or Rosmerinouski were personally liable for deliberate indifference to his serious medical needs, and the court will dismiss them as defendants.

### C. Plaintiff's Motion for an Extension of Time to Submit Trust Account Statement (Dkt. No. 5)

On August 29, 2017, the plaintiff asked the court to extend the time for him to provide his trust account statement. Dkt. No. 5. The court received the trust account statement two days later, so there is no need for the court to extend the time. The court will deny this motion as moot.

### D. Plaintiff's Motion to Appoint Counsel (Dkt. No. 11)

The plaintiff has filed a letter asking if the court or the state can provide him with an attorney to represent him in this case. Dkt. No. 11. In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyiola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff does not state that he tried to find an attorney on his own. That means that he has not satisfied that initial requirement of making a reasonable effort to find an attorney. He should contact at least three attorneys, and ask if they will represent him. If at least three attorneys turn the plaintiff down, or don't respond within a reasonable time, the plaintiff will have met the first requirement under Pruitt.

Even if the plaintiff had satisfied the initial requirement, the court would not grant his motion at this point. The plaintiff has filed a detailed complaint

explaining his claim. It is clear, coherent, easy to read and easy for the court to understand. Despite the plaintiff's assertion in the complaint that he has a learning disability (dkt. no. 1 at 2), the plaintiff appears to the court to be quite competent to represent himself at this stage in the proceedings. There is nothing further for the plaintiff to do right now but wait for the defendants to answer the complaint, and for the court to set a scheduling order. After that, the plaintiff may ask the defendants for documents and other information. If things get so complicated that the plaintiff cannot represent himself, he can file another motion asking the court to appoint counsel.

To help the plaintiff, the court will send along with this order a guide for prisoners representing themselves.

**E.     Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2

The court **DENIES AS MOOT** the plaintiff's motion for extension of time to submit trust account statement. Dkt. No. 5

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 11.

The court will mail the plaintiff a *pro se* guide, Answers to Prisoner Litigants Common Questions, along with this order.

The court **DISMISSES** defendants Schwartz-Oscar and Rosmerinouski.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's

complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on the state defendants.

The court **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Latour, Johnson and Lemmons shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state or federal— the transferring institution shall forward a copy of this order, along with the plaintiff's remaining account balance, to the receiving institution.

The court will send a copy of this order be sent to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the court. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he must submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not timely file documents or take other court-ordered actions by the deadlines the court sets, the court could dismiss his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 27th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**