UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEVEN LAMPLEY,

                Plaintiff,

v.                                            Case No. 17-cv-1132-pp

BRAD LATOUR, KATHY LEMENS,
and JOCELYN JOHNSON,

                Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 35), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 49) AND DISMISSING DEFENDANT KATHY LEMENS**

---

Plaintiff Steven Lampley is a former Wisconsin state prisoner who is representing himself. He filed a complaint, alleging that the defendants acted with deliberate indifference to the risk that he would attempt suicide in violation of his rights under the Eighth Amendment to the United States Constitution. Dkt. No. 1 at 2-5. The court allowed the plaintiff to proceed on that claim. Dkt. No. 17. The defendants have filed a motion for summary judgment, dkt. no. 36, as has the plaintiff, dkt. no. 49. The court will deny the plaintiff's motion and will grant in part and deny in part the defendants' motion.

**I.    Facts**

The plaintiff was incarcerated at the Green Bay Correctional Institution during the relevant period. See Dkt. No. 1. On the morning of June 4, 2017, defendants Correctional Officer Jocelyn Johnson and Brad Latour were

1

directed to move the plaintiff from a cell in the 500-wing of the Restrictive Housing Unit to cell 231. Dkt. No. 37 at ¶1. The plaintiff testified in his deposition that he had been purposefully getting conduct reports for some time, and that he intended to serve out the remainder of his prison term in the Restrictive Housing Unit. Id. at ¶2. He testified that although long-term segregation could have an adverse effect on some inmates, it did not have that effect on him because he wanted to be there. Id. at ¶3. The plaintiff further testified that a staff member had promised him that he would be able to remain in the 500-wing of the unit, which was a quieter unit. Id. at ¶4. The plaintiff said that as soon as Johnson and Latour told him he was being moved to cell 231, he knew that this was part of a certain supervisor's new plan to move all inmates who were refusing to leave the unit to the same area. Id. at ¶5.

The defendants assert that it is "undisputed that Plaintiff told Johnson and Latour, who escorted Plaintiff to his new cell, that he did not want to move cells." Id. at ¶6. He asked to speak with the sergeant, and he asked to speak with staff from the psychological services unit. Id. at ¶7. Johnson notified the sergeant on duty and psychological services staff member that the plaintiff wanted to speak with them.[1] Id. ¶¶7-8.

The parties dispute whether the plaintiff specifically told Johnson and Latour he was "suicidal." Id. at ¶9. In his deposition, the plaintiff said he told

---

[1] The defendants' proposed fact states that the "[d]efendants notified the sergeant and psychologist who was working that day of Plaintiff's requests." Dkt. No. 37 at ¶8. But the evidence cited (Johnson's declaration) states only that Johnson contacted the sergeant and psychological services staff member. Dkt. No. 38 at ¶¶8-9.

2

the officers that he "might commit suicide if you all put me up in here," meaning cell 231. Id. Johnson does not recall the plaintiff telling her on June 4, 2017 that he wanted to be placed on observation to avoid harming himself, or stating that he was suicidal. Dkt. No. 38 at ¶6.

After Johnson notified the sergeant and psychologist of the plaintiff's request to speak with them, the plaintiff waited for the sergeant or psychologist to show up so that he could talk to them about the cell transfer. Dkt. No. 37 at ¶23. The plaintiff fell asleep and later was told by other inmates that the psychologist had come to the wing while the plaintiff was sleeping (but these inmates supposedly told the plaintiff the psychologist had not stopped at the plaintiff's cell). Id.; Dkt. No. 39-1 at 64-66 (Lampley Dep.).

About forty-five minutes after the plaintiff was placed in his new cell, Latour passed out nail clippers to inmates as part of his normal duties. Dkt. No. 37 at ¶10. The plaintiff asked for nail clippers, and Latour gave him a pair. Id. at ¶11. Latour then forgot to retrieve the nail clippers. Id. The plaintiff did not tell Latour, or anyone else, that he had the nail clippers. Id. at ¶12. He specifically talked with Latour the next day (June 5) about passing out nail clippers—the plaintiff testified that he told Latour, who was a new employee at the time, that he should pass out nail clippers later in the day when inmates are less likely to be sleeping—but the plaintiff did not tell Latour he had forgotten to collect clippers from the plaintiff. Id. at ¶13.

The above-described interactions with Johnson and Latour are the only interactions between them and the plaintiff at issue in this case. Id. at ¶14.

On June 6, 2017, the plaintiff told defendant Kathy Lemens, a nurse who was doing rounds checking on inmates in the Restrictive Housing Unit, that he needed to see a psychological services staff member. Id. at ¶15. Later that night, the plaintiff used the nail clippers, which he still had, to cut his forehead, chest, and arms. Id. at ¶16. He was pulled out of his cell and offered medical attention. Id. at ¶17. Nursing staff cleaned the plaintiff's wounds and applied Band Aids to his arms. Id. The plaintiff did not need stitches or offsite medical attention. Id. at ¶18. He then was placed on observation for one day. Id. When the plaintiff said he was stable, he was released from observation. Id. at ¶19.

At some point after the plaintiff cut himself, a lieutenant talked to him and told him he would not be moved from cell 231. Id. at ¶20. The plaintiff accepted this and, after he was released from observation, he served out the remainder of his prison term in cell 231 without incident. Id. at ¶21. The incident on June 6, 2017 is the only time during the plaintiff's incarceration in which he tried to harm himself or was placed on observation status. Id. at ¶22.

**II.     Analysis**

    A.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir.

4

2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Discussion

1.  *Applicable Law*

To prevail on a claim for deliberate indifference to a serious medical condition, a prisoner must show that (1) he suffered from an objectively serious condition which created a substantial risk of harm, and (2) the defendants were aware of the risk and intentionally disregarded it. Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006). The Court of Appeals for the Seventh Circuit recently reiterated that "the risk of suicide is an objectively serious medical condition,

5

and it is well established that inmates have the right to be free from deliberate indifference to this risk while in custody." Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019).

"Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." Lisle, 933 F.3d at 716-17 (quoting Collins, 462 F.3d at 761). An official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and the official "must also draw the inference." Pittman ex rel. Hamilton v. Cty. of Madison, Ill., 746 F.3d 766, 776 (7th Cir. 2014) (quoting Higgins v. Corr. Med. Servs. of Ill., Inc., 178 F.3d 508, 511 (7th Cir. 1999)). This showing requires "more than mere or gross negligence, but less than purposeful infliction of harm." Lisle, 933 F.3d at 717 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

    2.    *Analysis*

The defendants contend that the plaintiff's claims fail as a matter of law under both the objective and subjective prongs of the Eighth Amendment analysis. Dkt. No. 36 at 1-2. In response to the defendants' summary judgment motion, the plaintiff filed two documents titled motion for summary judgment. Dkt. Nos. 46, 49. In the first document, the plaintiff contends that the defendants' failure to provide him with "supervisor and psychological attention" for three days after he informed them that he felt suicidal "was absolutely an

act of deliberate indifference." Dkt. No. 46 at 1. In the second document, the plaintiff contends that the court should grant his motion for summary judgment and that the defendants clearly acted with deliberate indifference to his rights. Dkt. No. 49 at 1.

a. Objective Prong: Serious Medical Need

The defendants argue that the plaintiff cannot satisfying the objective prong of an Eighth Amendment claim, based on the undisputed fact that he engaged in self-harm because he did not want to move from the quiet 500-wing to the noisier 200-wing of the Restrictive Housing Unit and because his self-inflicted cuts required only minor medical attention. Dkt. No. 36 at 5, 7. The defendants characterize the plaintiff's reason for self-harm as manipulative, arguing that he said he might commit suicide only to prevent his movement to a wing he didn't want to be moved to. Even if the defendants are right about the plaintiff's motivation, a threat of self-harm or suicide is an indicator of a risk and prison officials have a duty to prevent inmates from committing suiciding and from attempting to commit suicide. See Estate of Hill v. Richards, 525 F. Supp. 2d 1076, 1083-84 (W.D. Wis. 2007) (citing Freeman v. Berge, 441 F.3d 543, 546 (7th Cir. 2006) (while there is no Eighth Amendment violation for food deprivation when prisoner was denied food for refusing to comply with rules regarding food delivery, it does not follow that a prison can allow a prisoner to starve himself to death); Rodriguez v. Briley, 403 F.3d 952, 953 (7th Cir. 2005) ("At some point, refusal to eat might turn suicidal and then the prison would have to intervene.").

7

The defendants also point to the minor nature of the plaintiff's injuries in support of their argument that he did not have a serious medical need, and they cite cases from this district in support of their argument. Specifically, in Richter v. Vick, Case No. 17-C-1595, 2018 WL 6813927 (E.D. Wis. Dec. 27, 2018), Chief Judge William C. Griesbach found that the plaintiff had failed to offer any evidence from which a reasonable jury could find that he suffered from a serious mental health condition. Judge Griesbach stated that the "undisputed evidence established that the plaintiff was simply engaged in drug-seeking behavior and used his claim of mental illness and threats to harm himself as the means of obtaining the kind and amount of the drug he was seeking. . . . As a result, his superficial attempts to harm must be viewed as nothing more than a ploy to accomplish his goal." Id. at 8. While Judge Griesbach viewed the plaintiff's minor injuries to himself as confirmation that the plaintiff was not serious about hurting himself, the plaintiff's minor injuries were not the sole basis for that conclusion. The defendants presented evidence about the plaintiff's propensity for falsely or grossly exaggerating his medical complaints in order to receive a reward. The totality of the circumstances led Judge Griesbach to conclude that no reasonable jury could find that the plaintiff was ever actually at risk of seriously harming himself.

Similarly, in Lord v. Beam, Case No. 18-cv-351, 2019 WL 464138 (E.D. Wis. Feb. 6, 2019), Judge J.P. Stadtmueller held that the evidence demonstrated that despite the plaintiff's claims to the contrary, no reasonable jury could conclude that the plaintiff was genuinely suicidal at the time he

8

threatened to harm himself. Id. at 3. Again, while Judge Stadtmueller considered the severity of the plaintiff's injuries to himself in concluding that the plaintiff had no "real intention of seriously hurting himself" and "was childishly seeking secondary gain," the severity of his injuries was only one of several factors that supported Judge Stadtmueller's conclusion. Id.

The plaintiff in this case testified that on June 4, 2017 he told Johnson and Latour that he "might commit suicide if you all put me up in here," meaning cell 231. Two days later, the plaintiff used the nail clippers that defendant Latour had given him some forty-five minutes after the plaintiff allegedly told Latour that he was suicidal to cut his forehead, chest and arms. A reasonable factfinder could conclude that the plaintiff was at risk of objectively serious harm when he told Johnson and Latour that he was suicidal. See Lisle, 933 F.3d at 716; see also Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001) (suicide or attempted suicide is objectively serious and poses a substantial risk to health); Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999).

### b. Subjective Prong: Deliberate Indifference

The plaintiff claims that on June 6, 2017, he told Lemens that he needed to see a psychological services staff member. This is the plaintiff's only purported interaction with Lemens and it does not demonstrate deliberate indifference because there is no evidence showing that Lemens knew that the plaintiff was suicidal. See Pittman, 746 F.3d at 777 (citing Collins, 462 F.3d at 761 ("[A] request to see a crisis counselor, standing alone, is not sufficient to

9

put a defendant on notice that an inmate poses a substantial and imminent risk of suicide.")). Liability does not attach where "the defendants simply were not alerted to the likelihood that [the prisoner] was a genuine suicide risk." Collins, 462 F.3d at 761 (quoting Boncher ex rel. Boncher v. Brown Cty., 272 F.3d 484, 488 (7th Cir. 2001)). The court will grant the defendants' motion for summary judgment as to defendant Lemens.

The defendants contend that the court should grant summary judgment as to defendants Johnson and Latour because "when Plaintiff allegedly told [defendants Johnson and Latour] he was suicidal, they undisputedly notified the sergeant and psychologist that Plaintiff wanted to speak with them." Dkt. No. 36 at 8-9. According to the defendants, because "Johnson and Latour notified other staff of the incident involving Plaintiff, summary judgment should be granted in their favor."[2] Id. at 9.

In Collins, the Court of Appeals for the Seventh Circuit assumed that an officer had a subjective awareness of an "imminent" threat to an inmate's safety when the inmate told the officer he wanted to see the prison counselor because he was feeling suicidal. 462 F.3d at 761. The appeals court determined that there was no evidence from which a jury could conclude that the officer recklessly or intentionally disregarded a known risk of suicide because "the evidence properly of record demonstrates that [the officer] immediately

---

[2] Again, contrary to the defendants' assertion that both Johnson and Latour notified staff that the plaintiff wanted to talk with them, the record does not reflect that defendant Latour notified anyone about the plaintiff's interactions with him and Johnson.

10

informed the control room that [the inmate] had requested the assistance of a crisis counselor and was 'feeling suicidal.'" Id. at 762. The officer not only relayed the request, but returned to the inmate's cell and informed him that the counselor had been called and would be there as soon as possible; he received assurance from the inmate that he would be all right and could wait until the counselor arrived and returned to the inmate's cell a third time to make certain that nothing was wrong. Id.

In this case, Johnson does not recall the plaintiff telling her that he was suicidal. And while it is undisputed that she told the sergeant on duty and a psychological services unit staff member that the plaintiff wanted to speak with them, she did not tell them why he wanted to see them, *i.e.*, that he was suicidal. The parties' dispute over whether the plaintiff told Johnson and Latour that he was suicidal is material. If the plaintiff did not tell them, then his remark that he wanted to talk to the sergeant and a psychologist after his cell move is analogous to his statement to Lemens. See Pittman, 746 F.3d at 777 (citing Collins, 462 F.3d at 761 ("[A] request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of suicide.")). On the other hand, if the plaintiff did tell Johnson and Latour that he was suicidal, they were arguably aware of an imminent threat to the plaintiff's safety. See Collins, 462 F.3d at 761. And while Johnson told a sergeant and a psychological services unit staff member that the plaintiff wanted to speak to them, Johnson and Latour did not report that the plaintiff felt suicidal. Cf. Collins, 462 F.3d at 761 ("inmates

often request meetings with crisis counselors for reasons both serious and mundane"). Not only did they not report it, but forty-five minutes after the plaintiff allegedly said he was suicidal, Latour gave him a nail clipper and then forgot to pick it up. Two days later, the plaintiff used the nail clipper to harm himself.

The parties dispute whether the plaintiff told Johnson and Latour that he was suicidal, and this dispute relates to a material fact. The court will deny Johnson's and Latour's motion for summary judgment.

   c. <u>Qualified Immunity</u>

The defendants contend that they are entitled to qualified immunity. Dkt. No. 36 at 8. The defendants advance this argument in support of the objective prong of the Eighth Amendment claim. Specifically, they contend that it does not violate an inmate's Eighth Amendment rights, let alone his clearly established rights, for an inmate to intentionally cause non-life-threatening harm to himself simply because he is unhappy with a transfer to a new cell. <u>Id.</u>

Qualified immunity "protects government officials from suit for damages when their conduct does not violate clearly established statutory or constitutional rights." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." <u>Williams v. City of Chi.</u>, 733 F.3d 749, 758 (7th Cir.2013).

The defendants cite the above-referenced Richter and Lord cases, see supra. at 8-9, in support of their qualified immunity argument. However, as previously explained, these cases are distinguishable from the instant case. It was well established in June 2017 that the risk of suicide was an objectively serious medical condition under the Eighth Amendment. See Lisle, 933 F.3d at 716 (citing Estate of Clark v. Walker, 865 F.3d 544, 561 (7th Cir. 2017) (inmate's "right to be free from deliberate indifference to his risk of suicide while he was in custody was clearly established at the time of his death in 2012"); Woodward v. Correctional Medical Servs. of Ill., Inc., 368 F.3d 917, 926–27, 929 (7th Cir. 2004) (jail managers would be guilty of deliberate indifference if they took no precautions against the possibility of an inmate's suicide); Cavalieri v. Shepard, 321 F.3d 616, 623 (7th Cir. 2003) ("no doubt" the right of an inmate to be free from deliberate indifference to his risk of suicide was clearly established in 1998); Hall v. Ryan, 957 F.2d 402, 404-05 (7th Cir. 1992) ("It was clearly established in 1986 that police officers could not be deliberately indifferent to a detainee who is in need of medical attention because of a mental illness or who is a substantial suicide risk.")). The defendants are not entitled to qualified immunity.

d. Summary

The court will grant the defendants' motion for summary judgment as to defendant Lemens. Because there is a dispute as to the material fact of whether the plaintiff told Johnson and Latour that he was suicidal, such that their subsequent actions constituted deliberate indifference to the plaintiff's

risk of suicide, the court will deny the motion for summary judgment as to defendants Latour and Johnson. The court will deny the plaintiff's motion for summary judgment.

III. **Conclusion**

The court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment. Dkt. No. 35.

The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 49.

The court **DISMISSES** defendant Kathy Lemens.

The court will, by separate order, schedule a hearing to discuss next steps.

Dated in Milwaukee, Wisconsin this 9th day of December, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**